# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs September 28, 2011

## STATE OF TENNESSEE v. ANGELA COLLEY

**Direct Appeal from the Criminal Court for Sullivan County**
**No. S56,033    R. Jerry Beck, Judge**

**No. E2011-00250-CCA-R3-CD - Filed December 5, 2011**

The Defendant-Appellant, Angela Colley, entered guilty pleas to selling 0.5 grams or more of cocaine on June 9, 2008 (count one), delivering 0.5 grams or more of cocaine on June 9, 2008 (count two), selling less than 0.5 grams of cocaine on June 17, 2008 (count three), and delivering less than 0.5 grams of cocaine on June 17, 2008 (count four) in the Sullivan County Criminal Court.  Pursuant to her plea agreement, count two merged with count one and count four merged with count three, and Colley received a sentence of eight years at thirty percent for count one and a concurrent sentence of three years at thirty percent for count three, for an effective sentence of eight years, with the manner of service to be determined by the trial court.  At the sentencing hearing, the trial court denied all forms of alternative sentencing.  On appeal, Colley argues that the trial court erred in denying her request for an alternative sentence.  Upon review, we reverse the judgments of the trial court and remand for entry of judgments sentencing Colley to community corrections and for consideration of other terms and conditions that the trial court deems appropriate pursuant to the Community Corrections Act.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court**
**Reversed and Remanded**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which D. KELLY THOMAS, JR., J., joined. JOHN EVERETT WILLIAMS, J., filed a dissenting opinion.

Katherine L. Tranum, Kingsport, Tennessee, for the Defendant-Appellant, Angela Colley.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Assistant Attorney General; H. Greeley Wells, Jr., District Attorney General; and D. Adam Moore, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

## FACTUAL BACKGROUND

**Facts.** On June 9, 2008, Colley sold and delivered 0.5 grams or more of crack cocaine to a confidential informant in exchange for $200. This sale was witnessed by an officer with the Bristol Police Department and was recorded on videotape. On June 17, 2008, Colley sold and delivered less than 0.5 grams of crack cocaine to a confidential informant. Colley acknowledged that she committed the aforementioned offenses to support her own drug habit. We note that Colley did not include the plea submission hearing transcript in the record on appeal. Instead, we gleaned the facts regarding the above offenses from the sentencing hearing transcript, the presentence investigation report, and the indictment. As we will explain, we conclude that this record is sufficient for our review of the issues on appeal, despite the absence of the transcript from the plea submission hearing.

At the October 29, 2010 and January 31, 2011 sentencing hearings, the State entered a presentence investigation report into evidence, which showed that Colley had a criminal history composed solely of misdemeanors. Specifically, Colley had two convictions for speeding and two convictions for public intoxication, as well as convictions for shoplifting, failure to change lanes, and unlawful drug paraphernalia. The report also showed that Colley was placed on supervised probation for her convictions for public intoxication and possession of drug paraphernalia on January 5, 2009. In addition, on that same day, a violation of probation was issued against Colley for her failure to pay her probation fees. This violation was dismissed when Colley paid her probation fees on April 7, 2010. Colley was also placed on probation for her shoplifting conviction.

The presentence investigation report further showed that on July 12, 2000, Colley was charged with cruelty and injury to her child in the Juvenile and Domestic Relations District Court in Bristol, Virginia. On October 23, 2000, Colley entered a guilty plea to the misdemeanor charge of contributing to the delinquency of a minor.

In the instant case, Colley's mother, father, sister, and friend wrote letters on her behalf stating that Colley was no longer using drugs and requesting that she receive an alternative sentence.

**October 29, 2010 Sentencing Hearing.** In reviewing the presentence investigation report, the trial court stated that it gave weight to Colley's unlawful drug paraphernalia and shoplifting convictions. Also, the court gave "minor weight" to the two convictions for public intoxication and gave no weight to the traffic offenses. The court stated that it wanted to hear Colley's testimony regarding the child cruelty charge from Bristol, Virginia. In addition, the trial court said that the fact that Colley obtained her GED and then attended some college classes was a "favorable factor." The court acknowledged that Colley's conduct

neither caused nor threatened serious bodily injury, that Colley had expressed remorse for her actions, and that Colley had support from her family. See T.C.A. § 40-35-113(1), (13) (2006). The court said that it had reviewed the letters sent on Colley's behalf.

Colley testified that she currently lived with her mother because her mother needed assistance following knee surgery. Colley stated that she was pregnant, and her child was due November 4, 2010. She also said that she had successfully completed supervised probation for her conviction for unlawful drug paraphernalia.

Colley admitted that she had previously been addicted to cocaine but said she had not used drugs since November 2008. She stated that she currently took only prenatal vitamins and that she was last prescribed medication for knee and back pain in 2009. Colley said that she tried to attend an inpatient drug rehabilitation program, but the program she contacted had a waiting list of two to three years. She also said that she had attended drug and alcohol abuse counseling while she was on probation and was currently attending the counseling on a weekly basis after the conclusion of her probation. However, Colley said that she could not submit proof of her attendance at these counseling sessions because she was attending them voluntarily. Colley stated that she had passed all of the drug screens through her doctor and while on probation. She acknowledged that she had not been employed since 2005 and that her family provided her financial support. Colley stated she would live with her father if the court granted her probation.

Regarding the child cruelty charge in Bristol, Virginia, Colley said that she had been arrested for this offense after a day care worker saw marks on her son's body. She stated that her sister picked up her son the day that the marks were first discovered, but she was arrested the next day when she took him back to day care. At the hearing, Colley denied inflicting the injuries to her child and maintained that the marks were from a fall her child sustained while at the day care center. She admitted that she initially had been charged with felony child abuse but that this charge had been reduced to a misdemeanor offense. Colley denied serving a sentence in confinement or a probationary sentence for the criminal offense. She said that she was visited by social services two to three times a week for a year before the civil case regarding custody of her son was dismissed.

On cross-examination, the State asked the following questions of Colley:

The State:    Do you remember speaking with – with a detective up in Virginia and being interviewed and giving a verbal and a written statement that you were the one who put the marks on your son?

Colley:    Never did.

The State:     You never gave a written statement to the detectives in this case that you put marks on your son?

Colley:        I have a – I have a witness here today that can verify that. She's the one that picked my son up that day of that incident. . . .

. . . .

The Court:     [D]id you give a statement to the Bristol police . . . wherein you admitted putting the marks on the child?

Colley:        I remember giving a statement. I don't remember –

The Court:     And he's going to show you a copy of it, I guess.

Colley:        – I don't remember.

The State:     Could I hand up a copy, Your Honor, to refresh her memory about that?

([Colley] reviews certain material.)

Colley:        This statement is . . . I mean, I remember this. But I never put the marks on my child that day, so . . .

The State:     Okay. I guess my question, ma'am. You realize you're under oath. Is that right?

Colley:        Yes. And I've never abused [my child.]

. . . .

The State:     . . . [M]y question to her was: Did she give verbal or written statements to the officer in this case admitting to putting marks on her son? That was my question.

. . . .

The Court:     Did you or didn't you?

Colley:        No, I do not remember giving Sean Carrigan a statement that said I did put marks on my child, because I didn't.

The State:     So your answer is: No, you did not give a verbal or written statement to the detectives?

Colley:        I do not remember giving him a statement.

Following this testimony, the trial court ordered Colley to submit to a drug screen. The court then continued the sentencing hearing in order to hear testimony from Detective Carrigan about Colley's statement regarding the child cruelty charge.

**January 31, 2011 Sentencing Hearing.** Sean Carrigan, a detective with the police department in Bristol, Virginia, testified that he investigated a child cruelty case in which Colley was charged in July 2000. Detective Carrigan stated that he spoke with Colley about this charge on July 11, 2000, while her son was receiving medical attention for his injuries. Detective Carrigan said that Colley initially told him that her son had received the injuries from a fall but then said that another child may have hurt him. Later in the conversation, Colley told Detective Carrigan that she had thrown her son on a sofa and that her son had been playing with a light socket before she pulled him away from it. Finally, Detective Carrigan said that after he pointed out the inconsistencies in Colley's versions of what had happened, Colley became emotional and admitted that she had caused the bruises by grabbing her son too tightly when he was throwing a fit. Detective Carrigan stated that Colley's son suffered "extensive bruising on the undersides of the armpits and on the chest." He identified Colley as the individual who made the confession to him on July 11, 2000.

After Colley's verbal confession, Detective Carrigan advised her of her Miranda rights, and Colley gave a written statement admitting to accidentally injuring her son. Detective Carrigan stated that Colley's written statement was not as detailed as her verbal confession to him, and he opined that Colley's written statement was not as complete because she "was reluctant to admit her full guilt." He said that Colley was not under the influence of an intoxicant at the time of her statement; however, he asserted that she was not cooperative. Detective Carrigan stated that he remembered Colley entering a guilty plea to a misdemeanor charge regarding the incident. He also said that Colley filed a formal complaint against him because "she did not like the fact that I had called her a liar."

When the State asked Colley to clarify her previous testimony in which she denied giving a statement regarding the child cruelty charges, Colley said that she did not remember giving a statement. Colley then said that Detective Carrigan informed her that she would go

to jail if she did not provide a statement regarding the incident. Colley claimed her statement was not admission of guilt but an explanation of how her child might have been injured:

> [T]he statement that I do remember that I did write was maybe how it could have happened. Because when I picked my son up from day care and he had those marks, I wasn't sure how they got there. So the statement was of maybe how it could have happened.

Colley stated that she currently was unable to attend drug and alcohol abuse counseling because her father had died and she had recently given birth to her son.

On cross examination, Colley stated that her sister actually filed the formal complaint against Detective Carrigan. The State then asked her the following questions about her statements to Detective Carrigan regarding the child cruelty charge:

> Q. . . . . But when I asked you if you had ever given an oral or a written statement to Detective Carrigan, you first said, "<u>Never.</u>" Then you said, "<u>I don't remember that.</u>"
>
> A. I mean, I really did not remember. I mean, 'cause [sic] at the time he was screaming and yelling at me in the Food City parking lot on Euclid Avenue. And he was telling me if I didn't write a statement I was going to jail.
>
> Q. That's what Detective Carrigan told you in the car?
>
> A. And I didn't . . . That's why I don't remember if I wrote it or not because I didn't do it.
>
> Q. He was screaming and yelling at you, and you were being charged with a felony abuse of your child, but you don't remember if you gave a statement or not in that case?
>
> A. No, I don't. Because he was . . . The statement that I did end up writing was maybe how it could have happened.
>
> Q. I thought you said a few minutes ago that you didn't remember . . . giving a written statement.
>
> A. I remember giving the statement now that I've seen it. Yes.

Q. When I asked you that on that date and showed you the charges, you said you had never given a statement.

A. I – I really did not remember give – at the time if I gave one or not. No, I do not remember. At the time I didn't.

At the close of proof at the sentencing hearing, the trial court noted that while Colley's criminal history was not "earthshaking[,]" it did include "prior suspended sentences" for unlawful drug paraphernalia and shoplifting. The court then stated:

[Colley] is . . . not the perfect candidate for probation or alternative sentencing. In having a . . . hearing . . . the Court [wants] to hear truthful information coming from the Defendant, as oftentime [sic] that is indicative of whether [he or she] would be successful on probation or alternative sentencing. Her testimony . . . concerned the Court.

Well, she first denied making a statement to this . . . Bristol, Virginia, officer. Later equivocated and said she didn't remember.

This goes to the heart of the purposes of probation hearings. If the Court can't receive accurate and truthful information, the Court doubts whether the person would be . . . a good risk on probation.

. . . .

And I'll be quite frank with you. I'll draw it – if she's going to appeal it, I'll draw the issue real[ly] clearly. She would have probably made some form of alternative sentencing had it not been for the lie that she never gave a statement to the officer, then equivocating later on about it, about her statement she gave to the officer. I would have probably gone to our residential Community Corrections program in Kingsport, which is like a halfway house. Because she probably has drug problems, too.

But when it's this – this equivocation and flat-out saying [sic] that she didn't even give the officer a statement about it. I'm going to deny probation, all forms and all kinds.

At the conclusion of the sentencing hearing, the trial court denied all forms of alternative sentencing and determined that Colley would serve her effective sentence of eight years in the Tennessee Department of Correction. Colley filed a timely notice of appeal.

## ANALYSIS

As previously stated, Colley failed to include the transcript from the plea submission hearing in the record on appeal. However, because we conclude that the record is sufficient for our review, we will address the issues presented on appeal. See State v. Anna M. Steward, No. E2010-01918-CCA-R3-CD, 2011 WL 4346659, at *2 (Tenn. Crim. App., at Knoxville, Sept. 19, 2011) ("Despite the absence in the appellate record of a transcript of the plea submission hearing, we hold that the record is adequate for this court's de novo review[.]").

Colley argues that the trial court erred in denying alternative sentencing based on a "misunderstanding" regarding her testimony at the sentencing hearing. Specifically, she contends that the trial court erroneously concluded that she testified dishonestly about whether she gave a statement to the police in the child cruelty case, which was over ten years old. She claims that "she did not 'lie' to the court[] but that the court misunderstood the testimony and that the questions the prosecution was asking her were confusing and convoluted." Colley also argues that she is a favorable candidate for alternative sentencing given her limited criminal history, her previous success on probation, her family support, her drug-free status, her voluntary participation in drug abuse counseling, and the non-violent nature of her offenses. Finally, she argues that the State failed to present evidence that she was not a favorable candidate for alternative sentencing and contends that the trial court failed to impose the least restrictive sentence necessary to achieve the goals of the sentencing act. In response, the State contends that the trial court was justified in denying an alternative sentence based on Colley's lack of candor regarding the child cruelty offense, her criminal history, her history of drug abuse, and her sporadic work history. We disagree.

On appeal, we must review issues regarding the length and manner of service of a sentence de novo with a presumption that the trial court's determinations are correct. T.C.A. § 40-35-401(d) (2006). Nevertheless, "the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The defendant has the burden of showing the impropriety of the sentence. T.C.A. § 40-35-401(d) (2006), Sentencing Comm'n Comments. This means that if the trial court followed the statutory sentencing procedure, made adequate findings of fact that are supported by the record, and gave due consideration and proper weight to the factors and principles that are relevant to sentencing under the 1989 Sentencing Act, this court "may not disturb the sentence even if we would have preferred a different result." State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991). Because the trial

-8-

court did not properly consider the factors contained in section 40-35-103(1), our review is de novo with no presumption of correctness. See Ashby, 823 S.W.2d at 169.

A trial court, when sentencing a defendant, must consider the following:

(1) The evidence, if any, received at the trial and the sentencing hearing;

(2) The presentence report;

(3) The principles of sentencing and arguments as to sentencing alternatives;

(4) The nature and characteristics of the criminal conduct involved;

(5) Evidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114;

(6) Any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and

(7) Any statement the defendant wishes to make in the defendant's own behalf about sentencing.

T.C.A. § 40-35-210(b) (2006); see also State v. Imfeld, 70 S.W.3d 698, 704 (Tenn. 2002); State v. Osborne, 251 S.W.3d 1, 24 (Tenn. Crim. App. 2007).

Any sentence that does not involve complete confinement is an alternative sentence. See generally State v. Fields, 40 S.W.3d 435 (Tenn. 2001). Tennessee Code Annotated section 40-35-102(5) (2003) gives courts guidance regarding the types of individuals who should be required to serve their sentence in confinement:

In recognition that state prison capacities and the funds to build and maintain them are limited, convicted felons committing the most severe offenses, possessing criminal histories evincing a clear disregard for the laws and morals of society, and evincing failure of past efforts at rehabilitation shall be given first priority regarding sentencing involving incarceration[.]

Colley argues that she is a favorable candidate for alternative sentencing. However, the record shows that she was convicted of a Class B felony and a Class C felony and was sentenced to concurrent sentences of eight years and three years. See T.C.A. § 39-17-417(c)(1)-(2)(A) (2006). Accordingly, Colley is not considered a favorable candidate for

-9-

alternative sentencing under Tennessee Code Annotated section 40-35-102(6) (2006), which states that a defendant who does not require confinement under subsection (5) and "who is an especially mitigated or standard offender convicted of a Class C, D, or E felony, should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary[.]" A trial court, when imposing a sentence of total confinement, should base its decision on the following factors:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

T.C.A. § 40-35-103(1)(A)-(C) (2006); see also Ashby, 823 S.W.2d at 169.

We initially note that the trial court's determination of whether the defendant is entitled to an alternative sentence and whether the defendant is a suitable candidate for full probation are different inquiries with different burdens of proof. State v. Boggs, 932 S.W.2d 467, 477 (Tenn. Crim. App. 1996). Where a defendant is considered a favorable candidate for alternative sentencing, the State has the burden of presenting evidence to the contrary. See State v. Bingham, 910 S.W.2d 448, 454 (Tenn. Crim. App. 1995), overruled on other grounds by State v. Hooper, 29 S.W.3d 1, 9 (Tenn. 2000). However, the defendant has the burden of establishing suitability for full probation, even if the defendant is considered a favorable candidate for alternative sentencing. See id. (citing T.C.A. § 40-35-303(b)). Here, the State had no burden of presenting evidence to the contrary because Colley was not considered a favorable candidate for alternative sentencing. See T.C.A. § 40-35-102(6) (2006).

Here, Colley was eligible for probation because her sentence was ten years or less and the offense for which she was sentenced was not specifically excluded by statute. T.C.A. § 40-35-303(a) (2006). A trial court shall automatically consider probation as a sentencing alternative for eligible defendants. Id. § 40-35-303(b) (2006). However, "the defendant is not automatically entitled to probation as a matter of law." Id. § 40-35-303(b) (2006), Sentencing Comm'n Comments. Rather, the defendant must demonstrate that probation would serve the ends of justice and the best interests of both the public and the defendant. See State v. Souder, 105 S.W.3d 602, 607 (Tenn. Crim. App. 2002) (citation omitted).

When considering probation, the trial court should consider the nature and circumstances of the offense, the defendant's criminal record, the defendant's background and social history, his present condition, including physical and mental condition, the deterrent effect on the defendant, and the best interests of the defendant and the public. See State v. Kendrick, 10 S.W.3d 650, 656 (Tenn. Crim. App. 1999) (citing State v. Grear, 568 S.W.2d 285 (Tenn. 1978)). The court should also consider the potential for rehabilitation or treatment of the defendant in determining the appropriate sentence. See T.C.A. § 40-35-103(5) (2006). In addition, the principles of sentencing require the sentence to be "no greater than that deserved for the offense committed" and "the least severe measure necessary to achieve the purposes for which the sentence is imposed." Id. § 40-35-103(2), (4) (2006). In addition, "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant should be considered in determining the sentence alternative or length of a term to be imposed[,]" and "[t]he length of a term of probation may reflect the length of a treatment or rehabilitation program in which participation is a condition of the sentence[.]" Id. § 40-35-103(5). Finally, the Tennessee Supreme Court has held that truthfulness can be indicative of a defendant's potential for rehabilitation. See State v. Nunley, 22 S.W.3d 282, 289 (Tenn. Crim. App. 1999) ("Lack of candor and credibility are indications of a defendant's potential for rehabilitation."); State v. Bunch, 646 S.W.2d 158, 160 (Tenn. 1983) (citing State v. Poe, 614 S.W.2d 403, 404 (Tenn. Crim. App. 1981)) (A defendant's truthfulness "is certainly a factor which the court may consider at a probation hearing.").

Colley also argues that "she is eligible for, but not automatically entitled to, a community corrections sentence" because she was convicted of non-violent felonies. The State responds that the trial court was justified in denying all alternative sentencing options based on Colley's lack of candor, history of criminal behavior, history of drug abuse, and sporadic work history. We again disagree.

The intent of the Community Corrections Act was to "[e]stablish a policy within the state to punish selected, nonviolent felony offenders in front-end community based alternatives to incarceration, thereby reserving secure confinement facilities for violent felony offenders." T.C.A. § 40-36-103(1) (2006). Eligible offenders under the Community Corrections Act include:

(A) Persons who, without this option, would be incarcerated in a correctional institution;

(B) Persons who are convicted of property-related, or drug-or alcohol-related felony offenses or other felony offenses not involving crimes against the person as provided in title 39, chapter 13, parts 1-5;

(C) Persons who are convicted of nonviolent felony offenses;

(D)     Persons who are convicted of felony offenses in which the use or possession of a weapon was not involved;

(E)     Persons who do not demonstrate a present or past pattern of behavior indicating violence;

(F)     Persons who do not demonstrate a pattern of committing violent offenses; and

(2)     Persons who are sentenced to incarceration or are on escape at the time of consideration will not be eligible for punishment in the community.

Id. § 40-36-106(a)(1)(A)-(F), (2) (2006). Simply because an offender meets the minimum requirements under the Community Corrections Act "does not mean that he is entitled to be sentenced under the Act as a matter of law or right." State v. Ball, 973 S.W.2d 288, 294 (Tenn. Crim. App. 1998) (citing State v. Taylor, 744 S.W.2d 919, 922 (Tenn. Crim. App. 1987)). Instead, the Act's criteria "shall be interpreted as minimum state standards, guiding the determination of eligibility of offenders under this chapter." T.C.A. § 40-36-106(d) (2006).

In this case, Colley agreed to an effective eight-year sentence pursuant to her plea agreement. Although the trial court imposed a sentence of total confinement, it failed to base its sentencing decision on any of the factors in Tennessee Code Annotated section 40-35-103(1)(A)-(C) (2006).[1] Although Colley had a criminal record, we cannot conclude that her record, consisting solely of misdemeanors, constituted "a long history of criminal conduct" pursuant to section 40-35-103(1)(A). Second, we cannot conclude that the circumstances of the offenses were so "violent, horrifying, shocking, reprehensible, [or] offensive" as to require a denial of alternative sentencing based on the seriousness of the offense pursuant to section 40-35-103(1)(B). State v. Bottoms, 87 S.W.3d 95, 103 (Tenn.

---

[1] We note that the trial court, in denying all forms of alternative sentencing, held that Colley's lack of candor regarding the child cruelty case reflected poorly on her potential for rehabilitation pursuant to section 40-35-103(5). A panel of this court has concluded that "the untruthfulness of the defendant is relevant 'in determining the sentence alternative' and not as authority to deny all forms of alternatives to incarceration." State v. Kevin S. Phillips, No. 03C01-9801-CR-00024, 1999 WL 135058, at *3 (Tenn. Crim. App., at Knoxville, Mar. 12, 1999), perm. to appeal denied, concurring in results only (Tenn. Sept. 13, 1999); see also State v. Dowdy, 894 S.W.2d 301, 305 (Tenn. 1994) (holding that a defendant's potential for rehabilitation pursuant to section 40-35-103(5) becomes a factor for consideration only after the trial court has determined that a sentence of total confinement is improper).

Crim. App. 2001) (internal quotations and citations omitted); State v. Hartley, 818 S.W.2d 370, 374–75 (Tenn. Crim. App. 1991); State v. Travis, 622 S.W.2d 529, 534 (Tenn. 1981). Moreover, a review of the record shows that no proof was presented at the sentencing hearing regarding the need to deter others from committing similar offenses pursuant to section 40-35-103(1)(B). Nunley, 22 S.W.3d at 286 (holding that in order to use deterrence as a justification for confinement, evidence must be presented indicating some special need for deterrence in that jurisdiction). Third, other than Colley's failure to timely pay a single fine while on supervised probation, there was no proof that "[m]easures less restrictive than confinement have frequently or recently been applied unsuccessfully" to her pursuant to section 40-35-103(1)(C). Furthermore, we conclude that the trial court's decision to impose a sentence of total incarceration is unduly harsh given the facts and circumstances of this case and that Colley is a proper candidate for community corrections. Upon de novo review of the record, we reverse the judgments of the trial court and remand for entry of judgments sentencing Colley to community corrections and for consideration of other terms and conditions that the trial court deems appropriate pursuant to the Community Corrections Act.

## CONCLUSION

Upon review, we reverse the judgments of the trial court and remand the case for entry of judgments sentencing Colley to community corrections and for consideration of other terms and conditions that the trial court deems appropriate pursuant to the Community Corrections Act found in Tennessee Code Annotated section 40-36-101 et seq.

_____
CAMILLE R. McMULLEN, JUDGE

-13-